**Opinion filed April 9, 2020**



### In The

# Eleventh Court of Appeals

_____

## No. 11-19-00003-CV

_____

## IN THE INTEREST OF A.L.H., A CHILD

---

**On Appeal from the County Court at Law**
**Brown County, Texas**
**Trial Court Cause No. CV1411455**

---

## M E M O R A N D U M   O P I N I O N

This appeal stems from an order affecting the parent–child relationship.[1] Appellant, A.S., filed a petition to adjudicate the parentage of A.L.H., who was five years old at the time of the original petition. The trial court eventually entered an order adjudicating Appellant—rather than the presumed father, J.R.H., II—as the biological father of A.L.H. In its order, the trial court named Appellant as a parent possessory conservator of A.L.H.; named the child's mother, D.L.K., as a joint

---

[1]We note that the trial court's order does not involve the termination of parental rights and that two notices of appeal were originally filed: one by A.S. and one by J.R.H., II. J.R.H., II's portion of this appeal was previously dismissed for want of prosecution.

managing conservator; named J.R.H., II as a nonparent joint managing conservator of A.L.H.; entered judgment in the amount of $16,594.35 against Appellant and in favor of J.R.H., II for retroactive child support; ordered Appellant to pay more than $400 per month to J.R.H., II for current child support; and ordered the mother to pay $200 each month to Appellant as a partial reimbursement of Appellant's obligation to pay current child support. On appeal, Appellant presents three issues in which he complains of the trial court's rulings regarding conservatorship, retroactive child support, and current child support. We affirm the order of the trial court.

*Background Facts*

When the mother became pregnant with A.L.H., she did not know who the father was. She informed Appellant, who was one of the potential fathers, as soon as she realized that she might be pregnant. Soon thereafter, the mother married J.R.H., II. They were married when A.L.H. was born, and they had another daughter together before divorcing in May 2014. J.R.H., II was the presumptive father of both children, and he became the adjudicated father at the time of his divorce from the mother. In their divorce decree, J.R.H., II was named as the managing conservator with the right to establish the primary residence of both A.L.H. and her sister.

Appellant acknowledged that, based on the timing, he knew—from the moment that the mother told him of her pregnancy—that he could be the father. In fact, he went to the hospital to see the mother and A.L.H. on the day that A.L.H. was born. Appellant, however, did not pursue a paternity suit at that time; he said the mother told him that he was not the father of the child. However, in late 2013, after the child had turned four years old, the mother informed Appellant that he might be A.L.H.'s father. In December 2013, a paternity test revealed that Appellant was the probable father of A.L.H. Appellant waited until November 2014 to file the paternity suit. The bench trial did not commence until August 2017. At that time, the trial court ruled that Appellant was excused from failing to file his paternity suit

2

prior to the child's fourth birthday.[2]  The bench trial resumed in July 2018; by this time, A.L.H. was nine years old.  During the proceedings below, A.L.H. continued to reside primarily with her sister and J.R.H., II, who continued to raise A.L.H. as his daughter.  The order affecting the parent–child relationship was signed a few months after the final hearing.  This appeal followed.

*Analysis*

In his first issue, Appellant argues that the trial court abused its discretion by appointing Appellant as "a mere possessory conservator."  Nowhere in the record, however, can we find any request by Appellant asking that the trial court appoint him as a managing conservator of A.L.H.  In his petition, Appellant asked that he be adjudicated as A.L.H.'s father, that he be awarded costs, and that A.L.H.'s last name be changed.  In a supplemental petition, he asked that the mother be required to pay a share of child support.  In open court, Appellant testified that he would agree to a "stepped-up" visitation plan and was not even asking for unsupervised visitation at that point, and Appellant's attorney indicated that Appellant was not asking to alter J.R.H., II's status as a managing conservator but was merely asking the court to adjudicate Appellant as the biological father and give him "access" to A.L.H.  Because Appellant did not seek to be appointed as a managing conservator, we cannot hold that the trial court abused its discretion when it failed to appoint Appellant as a managing conservator.  *See In re C.A.M.M.*, 243 S.W.3d 211, 219–20 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (recognizing that trial court may not grant such relief in the absence of pleadings).  Accordingly, we overrule Appellant's first issue.

In his second issue, Appellant asserts that the trial court erred when it awarded retroactive child support from Appellant to J.R.H., II.  Appellant contends that the

---

[2]*See* TEX. FAM. CODE ANN. § 160.607 (West 2014).

Family Code does not support an award of retroactive child support under the circumstances in this case, that the award is manifestly unjust, and that J.R.H., II did not timely file the counterpetition in which he requested such support.

With respect to the matter of timeliness, the record reflects that J.R.H., II filed his counterpetition just two days prior to the commencement of the trial in August 2017. After two days of proceedings, the trial court made some rulings with regard to parentage and then recessed the trial so that a separate hearing on child support could be conducted after appropriate discovery. The trial resumed in July 2018, at which time the trial court considered child support. Although the counterpetition was not timely filed prior to the commencement of trial, *see* TEX. R. CIV. P. 63, the trial court's continuance of the matter for approximately eleven months cured the untimeliness of the counterpetition. *See In re Marriage of Brown*, 870 S.W.2d 600, 603 (Tex. App.—Amarillo 1993, writ denied). Under these circumstances, we cannot hold that the trial court abused its discretion in considering the matters alleged in the counterpetition.

With respect to the award of retroactive child support, the trial court found that it was reasonable and was in the child's best interest for Appellant to pay retroactive child support dating back to November 2014, the month that Appellant filed his original petition in this cause. When rendering an order adjudicating parentage, a trial court "may order retroactive child support as provided by Chapter 154." TEX. FAM. CODE ANN. § 160.636(g) (West Supp. 2019). In doing so, the trial court "shall use the child support guidelines provided by Chapter 154." *Id.* § 160.636(h). Chapter 154 authorizes a trial court to "order a parent to pay retroactive child support" if the parent was not previously ordered to pay child support and was not a party to a suit in which support was ordered. *Id.* § 154.009(a).

Appellant asserts that the payment of retroactive child support to someone other than the mother is not contemplated by the Family Code. We disagree. A trial

court has discretion to order that someone other than the mother or the attorney general on the mother's behalf should receive the appropriate child support. *Duran v. Garcia*, 224 S.W.3d 309, 314 (Tex. App.—El Paso 2005, no pet.).

Appellant next argues that, even if retroactive child support could be paid to J.R.H., II, the award "is manifestly unjust under these facts." Appellant does not argue that the trial court failed to follow the applicable child support guidelines. *See* FAM. §§ 154.121, .131. Instead, he argues that the award was unjust because he "was repeatedly and falsely assured he was not A.L.H.'s father" and because he had been denied access to A.L.H. We note that, during the entire period for which retroactive child support was ordered, Appellant knew that he was the biological father of A.L.H. based upon the paternity test and had actually filed suit to be adjudicated as the father. Under these circumstances, we cannot hold that the trial court's award of retroactive child support was manifestly unjust. We overrule Appellant's second issue.

In his third issue, Appellant asserts that the trial court erred "in merely having [the mother] reimburse [Appellant] for a portion of the child support obligation." Under this issue, Appellant points out that the mother was gainfully employed as a salesperson and that she has a duty to support her child. Appellant contends that the mother "should have to shoulder a larger [portion] of the child support burden" than $200 per month and that the burden should be split more equitably between Appellant and the mother. By its ruling, the trial court split the current child support burden between Appellant and the mother almost equally—with Appellant to pay the standard child support amount and the mother to reimburse Appellant for almost half of that amount. Appellant has not cited us to any authority that would support his contention that the mother should have to pay a larger portion of the child support, and based on the record before us, we cannot hold that the trial court abused its discretion in this regard. Accordingly, we overrule Appellant's third issue.

*This Court's Ruling*

We affirm the order of the trial court.

KEITH STRETCHER

JUSTICE

April 9, 2020

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[3]

Willson, J., not participating.

---

[3]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.